IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN ARTHUR RUGGLES,

        Petitioner,                 No. 2:11-cv-2624 KJM KJN P

    vs.

MATTHEW CATE, Director,          <u>ORDER AND</u>

        Respondent.       <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I.  <u>Introduction</u>

          Petitioner is a state prisoner, proceeding without counsel, with an application for petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Presently before the court is respondent's December 15, 2011 motion to dismiss the pending habeas petition as barred by the statute of limitations.

          On January 26, 2012, the court issued an order to show cause in response to petitioner's failure to file an opposition.  (Dkt. No. 10.)  On March 1, 2012, the court recommended that this action be dismissed as time-barred (dkt. no. 12), but the recommendations were vacated on May 1, 2012, and petitioner was granted an additional thirty days in which to oppose the motion (dkt. no. 16).  On June 15, 2012, the court recommended dismissing the action as time-barred (dkt. no. 17), but on July 18, 2012, the findings and recommendations were

vacated, and petitioner was granted up to and including August 20, 2012, in which to file an opposition to the motion to dismiss, and petitioner was cautioned that no further extensions of time would be granted.  (Dkt. No. 19.)  On August 3, 2012, petitioner filed a document styled "objections to the findings and recommendations and reply to the motion to dismiss."  (Dkt. No. 20.)  However, the August 3, 2012 filing was presented to prison officials for mailing on July 21, 2012, so it is unlikely that petitioner had benefit of the July 18, 2012 order in preparing the August 3 filing.  On August 17, 2012, respondent filed a reply to the objections.  (Dkt. No. 21.)  On September 4, 2012, petitioner filed a response to respondent's reply.  (Dkt. No. 22.)

Under Local Rule 230(l), the court contemplates the filing of a motion, an opposition, and a reply.  While petitioner's September 4, 2012 response is technically a sur-reply, in light of petitioner's difficulty in receiving court orders, and the crossing in the mail between the July 18, 2012 order and petitioner's August 3, 2012 response, the court will consider both the August 3, 2012 filing, and the September 4, 2012 filing, as petitioner's opposition to the motion.

For the reasons set forth below, the court recommends that respondent's motion to dismiss be granted, and this action be dismissed.

II.  Statutory Tolling

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed

application for State post-conviction or other collateral review with respect to the pertinent

judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C.

§ 2244(d)(2).

   The relevant chronology of this case is as follows:

   1.  Petitioner was convicted on May 1, 2008, of corporal injury to his spouse with

great bodily injury under circumstances involving domestic violence and causing the victim to

become comatose due to brain injury.  (Dkt. Nos. 1; 7.)  In a bifurcated proceeding, the trial court

found petitioner had suffered one prior strike conviction, and a prior serious felony conviction.

(Respondent's Lodged Document ("LD") 1-2.)  On July 17, 2008, petitioner was sentenced to

eighteen years in state prison.  (Dkt. No. 1 at 1.)

   2.  Petitioner appealed, and on January 13, 2010, the California Court of Appeal,

Third Appellate District, affirmed the judgment.  (LD 2.)

   3.  On February 12, 2010, petitioner filed a petition for review in the California

Supreme Court.  (LD 3.)  The California Supreme Court denied the petition for review on March

24, 2010.  (LD 4.)

   4.  On June 18, 2008,[1] petitioner filed a petition for writ of habeas corpus in the

Butte County Superior Court.  (LD 5.)  On June 25, 2008, the petition was denied.  (LD 6.)

////

---

  [1]  Both of the petitions for post-conviction relief are given the benefit of the mailbox rule.
See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date
prisoner delivers it to prison authorities).

1    5.  On October 3, 2011, petitioner filed a petition for writ of habeas corpus in the

2 Butte County Superior Court.  (LD 7.)  The petition was denied on November 4, 2011.  (LD 8.)

3    6.  Pursuant to Rule 3(d) of the Federal Rules Governing Section 2254 Cases, the

4 instant action was constructively filed on October 3, 2011.  (Dkt. No. 1.)

5    The statute of limitations begins to run when the petitioner's criminal judgment

6 becomes final.  The California Supreme Court denied the petition for review on March 24, 2010.

7 (LD 4.)  Petitioner's conviction became final ninety days later, on June 22, 2010, when the time

8 for seeking certiorari with the United States Supreme Court expired.  Bowen v. Roe, 188 F.3d

9 1157 (9th Cir. 1999).  The AEDPA statute of limitations period began to run the following day,

10 on June 23, 2010.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Absent tolling,

11 petitioner's last day to file his federal petition was on June 23, 2011.

12    The limitations period commenced on June 23, 2010.  Petitioner's first state court

13 petition was filed on June 18, 2008, prior to the beginning of the limitations period, and therefore

14 does not toll the statute of limitations period.  Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008).

15 Petitioner's second state court petition was filed on October 3, 2011, after the statute of

16 limitations period expired on June 24, 2011.  State habeas petitions filed after the one-year

17 statute of limitations period has expired do not revive the statute of limitations and have no

18 tolling effect.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jimenez v. Rice,

19 276 F.3d 478, 482 (9th Cir. 2001).

20    Petitioner concedes that he filed the instant petition after the statute of limitations

21 period expired.  (Dkt. No. 22 at 1.)  Petitioner argues that he should be granted equitable tolling,

22 and that he has presented a colorable claim of factual innocence demonstrating a miscarriage of

23 justice.  (Dkt. No. 20 at 2, 11-12; 22 at 2-5.)  Accordingly, the court turns to petitioner's

24 alternative claims.

25 ////

26 ////

III.  Equitable Tolling

In the petition signed October 3, 2011, petitioner states that

during the past year the [CDCR] has been going through a
population decrease and [his] personal property[, . . .] including
and not limited to all my legal work[,] was packed and stored
pending transfer of inmates to comply with Federal Court Orders.
Through the proper institutional procedures [plaintiff] was able to
finally track down and collect [his] legal property.  [Plaintiff]
understand[s] that [his] deadline per the "AEDPA" was in fact on
March 23, 2011.  Due to powers beyond [his] control [he] was
treated as an inmate who wanted access to his personal property, in
fact [he] had a deadline and hope that [he] may still be accepted by
the court.

(Dkt. No. 1 at 14.)  In his response to the court's earlier order to show cause, petitioner pled

ignorance of the law, lack of knowledge, and lack of legal assistance.  (Dkt. No. 13 at 3-4.)

Petitioner stated that these were not an excuse, but demonstrated that petitioner tried to be

diligent in attempting to seek justice.  (Id. at 3.)

Petitioner now claims that the filing of his federal petition was delayed based on

circumstances beyond his control.  Liberally construed, petitioner argues that his efforts to obtain

the legal files and evidence from his criminal defense attorney substantially delayed his ability to

timely file the federal petition.[2]  In support of this claim, petitioner provided copies of letters

from his defense attorney recounting counsel's efforts to prepare petitioner's file for shipping,

and then "re-create portions" of petitioner's file.  (Dkt. No. 20 at 20-23.)

Specifically, defense counsel informed petitioner that the cardboard box was

mailed to the prison on March 4, 2011.  (Dkt. No. 20 at 21.)  The box and lid were covered with

---

[2]  Petitioner's arguments concerning his ability to timely bring his federal claims are
difficult to parse because he continues to argue the merits of the petition, and includes his generic
arguments concerning the prison's alleged withholding of petitioner's legal materials during his
incarceration, and during his transfers between prisons, during the pendency of the instant
litigation.  For example, petitioner claims that once he arrived at the California Institution for
Men ("CIM"), his case file did not come with him.  (Dkt. No. 22 at 3.)  But petitioner was
transferred to CIM in 2012.  (Dkt. No. 18.)  Here, petitioner must demonstrate that he pursued his
rights diligently at all times prior to the filing of his federal habeas action.  Pace v. DiGuglielmo,
544 U.S. 410-11, 419 (2005).

strong shipping tape, clearly marked as legal materials, and did not contain any contraband. (Dkt. No. 20 at 21.)  On March 15, 2011, the box was returned to defense counsel, "having been 'refused' by the prison," and the box was returned "in very bad condition.  Sturdy shipping tape had been torn open and the discs and audio/video tapes had been removed."  (Id.)  On May 2, 2011, defense counsel informed petitioner that the Oroville Post Office confirmed that the box did not leave Oroville in that condition when counsel mailed it on March 4, 2011, and that the box was refused by the prison, and came back to counsel in damaged condition on March 15, 2011.  (Dkt. No. 20 at 23.)  At that time, petitioner was incarcerated at Pleasant Valley State Prison in Coalinga, California.  (Dkt. No. 20 at 20.)  Defense counsel then explained that he had sent plaintiff all the evidence counsel possessed, including tapes and photos, but that only some of the evidence came back.  Thus, defense counsel asked the prosecutor to look for her file, which defense counsel thought might be in a storage warehouse, so that defense counsel could make copies of the prosecutor's evidence, but defense counsel had not yet heard back from the prosecutor.  (Id.)

No additional letters from counsel were provided by petitioner, and petitioner did not provide the date he ultimately received the materials from defense counsel.  Petitioner did not provide copies of letters petitioner may have sent to defense counsel, and did not provide the date he initially requested this file from counsel.

Respondent argues that petitioner should not be entitled to equitable tolling based on petitioner's failure to provide specific facts or details of the alleged delay, and to demonstrate how that delay hindered him from filing a timely petition.

a. Legal Standards

In Holland v. Florida, 130 S. Ct. 2549, 2560, 2562, 2564 (2010), the Supreme Court recognized that the AEDPA statute of limitations "may be tolled for equitable reasons" when the petitioner has made a showing of "extraordinary circumstances."  To be entitled to equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently,

1  and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S.

2  408, 418 (2005).  The Ninth Circuit explained:

> To apply the doctrine in "extraordinary circumstances" necessarily
> suggests the doctrine's rarity, and the requirement that
> extraordinary circumstances "stood in his way" suggests that an
> external force must cause the untimeliness, rather than, as we have
> said, merely "oversight, miscalculation or negligence on [the
> petitioner's] part, all of which would preclude the application of
> equitable tolling.

7  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation omitted),

8  cert. denied, 130 S. Ct. 244 (2009).  It is petitioner's burden to show that he is entitled to

9  equitable tolling.  Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026

10  (9th Cir. 2005).  "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very

11  high, lest the exceptions swallow the rule."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)

12  (citation omitted).  The petitioner must also demonstrate that he exercised reasonable diligence in

13  attempting to file his habeas petition after the extraordinary circumstances began, otherwise the

14  "link of causation between the extraordinary circumstances and the failure to file [is] broken."

15  Spitsyn, 345 F.3d at 802.  A petitioner who fails to file a timely petition due to his own lack of

16  diligence is not entitled to equitable tolling.  Pace, 544 U.S. at 410-11, 419.

17       A petitioner may be entitled to tolling if he is denied access to legal papers despite

18  his repeated requests for them.  See e.g., Espinoza-Matthews, 432 F.3d at 1027-28 (equitable

19  tolling applies if, despite the petitioner's diligence in seeking his legal file, he is not provided

20  access during the limitations period); Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002) (if

21  established, denying a prisoner access to his legal files during two temporary transfers which

22  lasted eight days would satisfy the "extraordinary circumstances" requirement for equitable

23  tolling).  However, a "temporary deprivation of an inmate's legal materials does not, in all cases,

24  rise to a constitutional deprivation."  Id. at 925.

25  ////

26  ////

7

1          b. <u>Analysis</u>

2             i. <u>Deprivation of Legal Materials</u>

3       Petitioner did not renew this claim of deprivation of legal materials in his current

4 opposition, but the court will address the claim because it was included in the petition.  While the

5 deprivation of legal materials for a year may constitute "extraordinary circumstances," petitioner

6 must still demonstrate that he made reasonably diligent efforts to both obtain his legal materials

7 and to pursue his rights.  Here, petitioner failed to articulate the specific dates his legal materials

8 were taken from him, and did not set forth what efforts he took, if any, to obtain access to his

9 legal materials during the "past year" petitioner referenced in the petition.  Prisons have

10 procedures in place to allow inmates to access their legal materials, as well as an administrative

11 grievance system in which to alert prison officials to such a deprivation.  Plaintiff failed to allege

12 his efforts, if any, to avail himself of these procedures.

13       It appears petitioner also claimed his requests for his property were treated as

14 requests for personal property rather than legal property.  However, petitioner failed to articulate

15 what steps he took to clear up any such misunderstanding.  Petitioner acknowledged he was

16 aware that there is a one year federal statute of limitations period.  But petitioner failed to

17 articulate facts showing that he pursued his rights diligently.  In addition, petitioner provided no

18 factual allegations as to his efforts to pursue his rights during the three months prior to the one

19 year period his legal materials were allegedly packed and stored.  The statute of limitations

20 period commenced on June 23, 2010.  The date of October 3, 2010 ("during the past year... my

21 legal work was packed and stored ..." Dkt. No. 1, at 14)[3], is one year prior to the date petitioner

22 signed the petition, leaving a little over three months before petitioner's legal materials were

23 stored for petitioner to pursue habeas relief.  Petitioner provides no facts to support application of

24 equitable tolling for this period of just over three months.

25 

26         [3] Petitioner also does not specify the date on which he once again obtained his legal materials.

1    In his subsequent briefing, petitioner again provided no specific information as to

2 his efforts to obtain his legal materials from prison officials, or to explain what efforts he took to

3 pursue habeas relief during the three months prior to the alleged storage of his legal materials.

4 Petitioner asked "what is he supposed to do when staff disobey the law?" and then claimed there

5 was "nothing he can do when he is locked in prison and staff refuses to do their jobs."  (Dkt. No.

6 22 at 3.)  However, as noted above, there are procedures in place for petitioner to seek access to

7 his legal materials in prison, and, if those efforts failed, petitioner could use the grievance

8 process to obtain access.  Despite multiple opportunities, petitioner failed to set forth what steps

9 he took, if any, to avail himself of those procedures.  Thus, petitioner failed to demonstrate both

10 that he was pursuing his rights diligently, or that some extraordinary circumstance stood in his

11 way in connection with his claim that he was deprived of his legal materials by prison officials.

12                          ii.  Petitioner's Pro Se Status

13    To the extent petitioner argues that he is entitled to equitable tolling based on his

14 ignorance of the law, lack of knowledge, or lack of legal assistance, such arguments are

15 unavailing.  Lack of knowledge of the law or legal assistance does not establish "extraordinary

16 circumstances" preventing him from timely filing a federal habeas petition.  The Ninth Circuit

17 has held that a petitioner's pro se status and claims of ignorance of the law are insufficient to

18 justify equitable tolling.  See Waldron–Ramsey, 556 F.3d at 1013 n.4 ("we have held that a pro

19 se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting

20 equitable tolling"); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se

21 petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting

22 equitable tolling"); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (pro se

23 prisoner's illiteracy and lack of knowledge of law unfortunate, but insufficient to establish

24 cause).

25                          iii.  Delay in Obtaining Defense Counsel's Files

26    Petitioner argues that he is entitled to equitable tolling because he was unable to

9

timely obtain defense counsel's files and evidence.  As set forth above, petitioner supported this claim with letters from counsel sent during some portion of the statute of limitations period.

The Ninth Circuit has recognized that a petitioner's separation from his file and transcripts may provide a basis for equitable tolling.  Ramirez v. Yates, 571 F.3d 993, 998 (9th Cir. 2009) (a complete lack of access to a legal file may constitute an extraordinary circumstance); United States v. Battles, 362 F.3d 1195, 1197 (9th Cir. 2004) (equitable tolling may be allowed if counsel withheld transcripts during limitations period).  It is not sufficient to show that he did not have his legal files during the limitations period; petitioner must also show how the lack of access to his file made a timely filing impossible and that he was diligent in seeking his files.  Ramirez 571 F.3d at 998.  Petitioner has not made either showing.

First, petitioner failed to demonstrate that he was diligent in seeking defense counsel's files.  Here, petitioner was convicted on May 1, 2008, and his conviction was affirmed on March 24, 2010.  Thus, petitioner could have sought defense counsel's files and evidence shortly after March 24, 2010.  Petitioner provided no evidence as to his efforts to obtain these legal materials from defense counsel from June 23, 2010, the date the limitations period began running, until some time before March 1, 2011.  The March 1, 2011 letter raises an inference that petitioner requested his files some time prior to March 1, 2011.  But petitioner did not state when he first sought defense counsel's files, or explain what efforts he took to obtain the files. Because the first letter from defense counsel is dated March 1, 2011, almost a year after his conviction was affirmed on March 24, 2010, and a few months prior to the expiration of the statute of limitations deadline, petitioner failed to demonstrate diligence.  Moreover, petitioner acknowledged in his petition that he understood the AEDPA statute of limitations deadline was March 23, 2011.  (Dkt. No. 1 at 14.)  Given petitioner's understanding of the deadline, seeking defense counsel's files some time prior to March 1, 2011, cannot be construed as reasonable diligence.

////

1      Second, petitioner failed to show it was impossible for him to prepare a basic

2  habeas petition without defense counsel's files.  Petitioner does not allege that he was not sent

3  the appellate briefs or superior court petition which could have provided him information

4  sufficient to draft a federal petition.  Indeed, defense counsel's May 2, 2011 letter confirmed that

5  appellate counsel had mailed to petitioner "all of the transcripts and briefs, but none of the

6  evidence."  (Dkt. No. 20 at 23.)  Petitioner does not identify what information he had available,

7  or what additional information he needed.  Petitioner only makes reference to not having "all of

8  the relevant facts before him."  (Dkt. No. 22 at 2.)  Moreover, it does not appear that petitioner

9  raised new claims in the instant petition; rather, petitioner simply attached a copy of appellate

10  counsel's petition for review that was filed in the California Supreme Court on February 12,

11  2010.  (Compare Dkt. No. 1 at 17-44 to LD 3.)  Thus, petitioner failed to demonstrate what

12  additional information was required from defense counsel's files to enable petitioner to timely

13  file the federal petition.

14      Therefore, although petitioner provided some evidence that he did not have

15  defense counsel's complete files during some portion of the limitations period, petitioner failed

16  to show he was diligent in seeking the files, or that the lack of access to defense counsel's

17  complete files made the timely filing of his federal petition impossible.  Thus, petitioner is not

18  entitled to equitable tolling on this claim.

19          iv.  Conclusion re Equitable Tolling

20      Respondent's motion to dismiss was filed on December 15, 2011.  (Dkt. No. 7.)

21  On March 1, 2012, petitioner was informed of the legal standards governing equitable tolling,

22  and advised that it was his burden to show that he is entitled to equitable tolling.  (Dkt. No. 12 at

23  4-5.)  Petitioner was subsequently granted two extensions of time to oppose the motion to

24  dismiss (dkt. nos. 16, 19), in which he could have presented specific facts, dates, and arguments

25  in support of his request for equitable tolling.  Despite this generous opportunity to provide

26  specific facts and details concerning the alleged delay, and how the delay may have prevented

1  petitioner from timely filing the instant petition, petitioner failed to meet his burden.  Thus,

2  petitioner is not entitled to equitable tolling.

3  V.  Actual Innocence

4         In his response to the court's order to show cause, petitioner claimed that there

5  was new evidence proving the claims of the petitioner which were previously unavailable at trial,

6  and that petitioner therefore has a claim of "actual innocence and/or miscarriage of justice."

7  (Dkt. No. 13 at 2, 8.)  As noted in this court's May 1, 2012 order, it appears that petitioner

8  contends that the fact that his ex-wife died from a fall in 2009 demonstrates that rather than being

9  beaten by petitioner, his ex-wife could have similarly fallen in 2008, as petitioner contended at

10  trial.  (Dkt. No. 13 at 8.)  Petitioner provided a photocopy of the victim's death certificate

11  showing that petitioner's ex-wife died on December 21, 2009, of an acute intracerebral

12  hemorrhage and an accidental fall.  (Dkt. No. 15 at 203.)  Petitioner provided a photocopy of a

13  letter from Sandy, the victim's daughter, who notified petitioner of her mother's death by letter

14  written prior to the victim's viewing and funeral.  (Dkt. No. 15 at 200-02.)  Sandy's letter

15  informed petitioner that his ex-wife fell on cement, and described the ex-wife's subsequent

16  medical treatment and symptoms.  (Id.)  Moreover, petitioner provided a photocopy of a January

17  21, 2010 letter written by petitioner's sister, Sally Fowler, to petitioner's appellate counsel,

18  advising counsel that petitioner's ex-wife had died, and stating:  "In [petitioner's] trial, it was

19  stated that a fall would not have caused Martha['s] injuries, yet in the end it was a fall that caused

20  her death."  (Dkt. No. 15 at 198.)  Ms. Fowler went on to describe her view of the victim's

21  medical history, and how she thought the victim was "very unstable on her feet and required

22  assistance from [petitioner] to get in and out of bed, a car, or just move around the house."  (Id.)

23         In his current opposition, petitioner's claim of actual innocence is more vague.

24  Petitioner argues that it is error for the court to deny his actual innocence claim on the basis that

25  there was sufficient evidence to support the jury's verdict, and that "not only did petitioner not

26  beat his wife, but . . . if not for the numerous and very prejudicial acts of trial counsel, the jury

1    would have at the very least 'reasonable doubt.'" (Dkt. No. 20 at 11.) Petitioner claims that the

2    evidence presented at trial was one-sided, that defense counsel failed to call witnesses to testify

3    that the victim often suffered bruising due to normal daily functions, and again reiterates his

4    myriad claims of alleged ineffective assistance of defense counsel during trial. (Dkt. No. 20 at 4-

5    11.) In his September 4, 2012 filing, petitioner claims that he has not abandoned his claim that

6    he is factually innocent. (Dkt. No. 22 at 4.) Petitioner contends that if he had been represented

7    by "competent" counsel at trial, the jury would have reached a different verdict. (Id.) Petitioner

8    now alleges that the "only thing used to convict the petitioner was speculation," and that the

9    "only person saying petitioner hit his wife is from the step-daughter that hates him." (Dkt. No.

10   22 at 4-5.)

11           Respondent argues that petitioner failed to explain or provide evidence to

12   demonstrate his claim of innocence. (Dkt. No. 21 at 4.) Respondent contends that petitioner's

13   reliance on ineffective of assistance claims based on events that took place during trial are

14   insufficient to meet the high standard required, because the claims are not evidence of

15   petitioner's innocence. (Id.)

16           The Supreme Court has held that a court may consider an otherwise procedurally

17   defaulted claim for habeas relief if the court's failure to hear the claim will result in a miscarriage

18   of justice, particularly in a case where the petitioner demonstrates "actual innocence." Schlup v.

19   Delo, 513 U.S. 298, 324-29 (1995) ('[A]ctual innocence' means factual innocence, not mere

20   legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).) Further, the Ninth

21   Circuit has held that "where an otherwise time-barred habeas petitioner demonstrates that it is

22   more likely than not that no reasonable juror would have found him guilty beyond a reasonable

23   doubt, the petitioner may pass through the Schlup gateway and have his constitutional claims

24   heard on the merits." Lee v. Lampert, 653 F.3d 929, 930 (9th Cir. 2011). Schlup requires a

25   petitioner "to support his allegations of constitutional error with new reliable evidence -- whether

26   it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

1   evidence -- that was not presented at trial."  Schlup, 513 U.S. at 324; Griffin v. Johnson, 350

2   F.3d 956, 962-63 (9th Cir. 2003) (Schlup's "new reliable evidence" threshold requires only

3   "newly presented evidence," that is, evidence which was not presented at trial.)  Petitioner must

4   show that in light of all the evidence, including evidence not introduced at trial, "it is more likely

5   than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

6   Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (stating that in order to be credible, a claim of

7   actual innocence requires that the petitioner support his allegations of constitutional error with

8   new reliable evidence that was not presented at trial) (quoting Schlup, 513 U.S. at 327).   In

9   considering this new evidence, the court is not bound by the rules of admissibility.  Id., at 316.

10        First, petitioner previously conceded that his ex-wife "said both that petitioner hit

11   her and [that she] sustained [her injuries] in a fall."  (Dkt. No. 15 at 8.)  Petitioner admits that he

12   argued at trial that his ex-wife sustained her injuries during a fall rather than from petitioner's

13   own hand.  (Id.)  Thus, the jury received evidence that the victim was injured in a fall, yet

14   decided that the victim was injured by petitioner rather than from injuries sustained from a fall.

15   Indeed, at the Marsden[4] hearing after the jury verdict, petitioner's defense counsel noted that "the

16   entire allegation of what happened to Martha [the victim] depended on what Martha said in front

17   of the jury.  I think Martha came through loud and clear that [petitioner] had assaulted her."

18   (Dkt. No. 15 at 42.)  The jury found petitioner guilty despite the defense eliciting on rebuttal her

19   statement that petitioner "wouldn't hurt her."  (Dkt. No. 15 at 44-45.)  Thus, that petitioner's ex-

20   wife victim subsequently died from a fall does not demonstrate that it is more likely than not that

21   no reasonable juror would have found petitioner guilty of domestic violence beyond a reasonable

22   doubt.

23        Second, to the extent that petitioner contends that his ex-wife's subsequent death

24   from a fall "exactly" like the fall petitioner contended inflicted the earlier injuries at issue here

25

26       [4] People v. Marsden, 2 Cal.3d 118 (1970).

means that the new evidence would tip the scale in petitioner's favor, such a theory is speculative and conclusory.  Petitioner claims that his ex-wife's death occurred exactly as petitioner said she was previously injured.  (Dkt. No. 14 at 8.)  But the court is unable to make such an assumption from the proposed evidence submitted by petitioner.  The circumstances of the victim's final fall are not included, and petitioner offered no facts or evidence supporting his claim that the falls were "exactly" the same.  Moreover, the fact that the victim later died from a fall does not preclude the jury's finding that petitioner injured the victim on an earlier occasion.  Falls differ in circumstance and cause.  As noted in Ms. Fowler's letter, evidence was adduced at trial that the victim's injuries would not have been caused by a fall.  (Dkt. No. 15 at 198.)  But more importantly, the subsequent fall would have no bearing on the victim's own testimony that petitioner assaulted her.  Thus, the proposed new evidence, taken with the evidence adduced at trial, would not lead a reasonable juror to conclude that petitioner did not commit domestic violence on the victim.

        Petitioner's argument that the only thing used to convict him was "speculation," and that it was only the step-daughter who said petitioner hit his ex-wife, is not supported by the record.  But in any event, this argument is unavailing under the <u>Schlup</u> standard.  As set forth above, petitioner must submit new reliable evidence that was not presented at trial.  Simply re-arguing the evidence presented at trial is insufficient because it does not demonstrate that petitioner is probably innocent of domestic violence.  Moreover, as argued by respondent, petitioner's ineffective assistance of counsel claims also do not support a claim of actual innocence under <u>Schlup</u>.  Petitioner's claims that his counsel was ineffective are mere legal insufficiency claims, not evidence of petitioner's actual innocence.  Similarly, petitioner's self-serving and unsupported statement that he did not hit his wife is not new evidence demonstrating that petitioner is actually innocent of domestic violence.  In cases where courts have determined that a federal habeas petitioner met the <u>Schlup</u> standard, the "new evidence" consisted of credible evidence such as the petitioner's solid alibi, <u>see</u> <u>Garcia v. Portuondo</u>, 334 F. Supp. 2d 446 (S.D.

1   N.Y. 2004), numerous eyewitness accounts of the crime that exonerated the petitioner, see

2   Schlup v. Delo, 912 F. Supp. 448 (E.D. Mo.1995) (on remand), DNA evidence excluding the

3   petitioner and identifying another potential perpetrator, see House v. Bell, 547 U.S. 518, 538-53

4   (2006), and a credible confession by a likely suspect stating that he had framed the petitioner, see

5   Carriger v. Stewart, 132 F.3d 463, 477-82 (9th Cir. 1997).  Petitioner's contentions of innocence

6   fall far short of meeting the Schlup standard.

7        For all the above reasons, petitioner fails to present any new reliable evidence, not

8   presented at trial, that shows it is more likely than not that no reasonable juror would find

9   petitioner guilty beyond a reasonable doubt.  Schlup, 513 U.S. at 324.  Thus, petitioner is not

10  excused from his late filing under the Schlup "actual innocence" exception, and the petition must

11  be dismissed as time-barred.

12  VI.  Request For An Evidentiary Hearing

13       Petitioner asks for an evidentiary hearing because "respondent has done nothing

14  but deny the claims of the petitioner," and "[t]he way to prove petitioner's claims is to let

15  experienced attorneys resolve this case in a court of law."  (Dkt. No. 22 at 6.)  However,

16  petitioner presented nothing which suggests that a hearing would allow him to develop

17  information he was unable to present either through documents or his own declaration.  Thus,

18  petitioner's request is denied.

19  VII.  Certificate of Appealability

20       In order to proceed with an appeal, petitioner must receive a certificate of

21  appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; Allen v. Ornoski, 435 F.3d 946, 950-

22  51 (9th Cir. 2006).  Generally, a petitioner must make a substantial showing of the denial of a

23  constitutional right to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); Slack v.

24  McDaniel, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable

25  jurists would find the district court's assessment of the constitutional claims debatable or

26  wrong." Id., 529 U.S. at 484.  In order to meet this threshold inquiry, the petitioner has the

burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. Id. This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court therefore recommends denying petitioner a certificate of appealability.

VIII. Conclusion

Accordingly, IT IS HEREBY ORDERED that petitioner's request for evidentiary hearing is denied; and

IT IS RECOMMENDED that:

1. Respondent's December 15, 2011 motion to dismiss (dkt. no. 7) be granted;

2. This action be dismissed; and

3. Petitioner be denied a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 19, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

rugg2624.mtda2