IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN ARTHUR RUGGLES,

        Petitioner,                No. 2:11-cv-2624 KJM KJN P

     vs.

MATTHEW CATE, Director,        ORDER AND

        Respondent.        FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner, proceeding without counsel, with an application for petition of writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Presently before the court is respondent's December 15, 2011 motion to dismiss the pending habeas petition as barred by the statute of limitations.

        On January 26, 2012, the court issued an order to show cause in response to petitioner's failure to file an opposition. (Dkt. No. 10.)  On March 1, 2012, the court recommended that this action be dismissed as time-barred (dkt. no. 12), but the recommendations were vacated on May 1, 2012, and petitioner was granted an additional thirty days in which to oppose the motion (dkt. no. 16).  On June 15, 2012, the court recommended dismissing the action as time-barred (dkt. no. 17), but on July 18, 2012, the findings and recommendations were

1

1  vacated, and petitioner was granted up to and including August 20, 2012, in which to file an

2  opposition to the motion to dismiss, and petitioner was cautioned that no further extensions of

3  time would be granted.  (Dkt. No. 19.)  On August 3, 2012, petitioner filed a document styled

4  "objections to the findings and recommendations and reply to the motion to dismiss."  (Dkt. No.

5  20.)  However, the August 3, 2012 filing was presented to prison officials for mailing on July 21,

6  2012, so it is unlikely that petitioner had benefit of the July 18, 2012 order in preparing the

7  August 3 filing.  On August 17, 2012, respondent filed a reply to the objections.  (Dkt. No. 21.)

8  On September 4, 2012, petitioner filed a response to respondent's reply.  (Dkt. No. 22.)

9  　　　　　Under Local Rule 230(l), the court contemplates the filing of a motion, an

10  opposition, and a reply.  While petitioner's September 4, 2012 response is technically a sur-reply,

11  in light of petitioner's difficulty in receiving court orders, and the crossing in the mail between

12  the July 18, 2012 order and petitioner's August 3, 2012 response, the court will consider both the

13  August 3, 2012 filing, and the September 4, 2012 filing, as petitioner's opposition to the motion.

14  　　　　　For the reasons set forth below, the court recommends that respondent's motion to

15  dismiss be granted, and this action be dismissed.

16  II.  Statutory Tolling

17  　　　　　On April 24, 1996, the Antiterrorism and Effective Death Penalty Act

18  ("AEDPA") was enacted.  Section 2244(d)(1) of Title 8 of the United States Code provides:

19  　　　　　A 1-year period of limitation shall apply to an application for a writ
　　　　　of habeas corpus by a person in custody pursuant to the judgment
20  　　　　　of a State court.  The limitation period shall run from the latest of –

21  　　　　　(A) the date on which the judgment became final by the conclusion
　　　　　of direct review or the expiration of the time for seeking such
22  　　　　　review;

23  　　　　　(B) the date on which the impediment to filing an application
　　　　　created by State action in violation of the Constitution or laws of
24  　　　　　the United States is removed, if the applicant was prevented from
　　　　　filing by such State action;

25
　　　　　(C) the date on which the constitutional right asserted was initially
26  　　　　　recognized by the Supreme Court, if the right has been newly

1    recognized by the Supreme Court and made retroactively
     applicable to cases on collateral review; or
2
     (D) the date on which the factual predicate of the claim or claims
3    presented could have been discovered through the exercise of due
     diligence.
4

5    28 U.S.C. § 2244(d)(1).  Section 2244(d)(2) provides that "the time during which a properly filed

6    application for State post-conviction or other collateral review with respect to the pertinent

7    judgment or claim is pending shall not be counted toward" the limitations period.  28 U.S.C.

8    § 2244(d)(2).

9              The relevant chronology of this case is as follows:

10             1.  Petitioner was convicted on May 1, 2008, of corporal injury to his spouse with

11   great bodily injury under circumstances involving domestic violence and causing the victim to

12   become comatose due to brain injury.  (Dkt. Nos. 1; 7.)  In a bifurcated proceeding, the trial court

13   found petitioner had suffered one prior strike conviction, and a prior serious felony conviction.

14   (Respondent's Lodged Document ("LD") 1-2.)  On July 17, 2008, petitioner was sentenced to

15   eighteen years in state prison.  (Dkt. No. 1 at 1.)

16             2.  Petitioner appealed, and on January 13, 2010, the California Court of Appeal,

17   Third Appellate District, affirmed the judgment.  (LD 2.)

18             3.  On February 12, 2010, petitioner filed a petition for review in the California

19   Supreme Court.  (LD 3.)  The California Supreme Court denied the petition for review on March

20   24, 2010.  (LD 4.)

21             4.  On June 18, 2008,[1] petitioner filed a petition for writ of habeas corpus in the

22   Butte County Superior Court.  (LD 5.)  On June 25, 2008, the petition was denied.  (LD 6.)

23   ////

24

---

25        [1]  Both of the petitions for post-conviction relief are given the benefit of the mailbox rule.
     See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date
26   prisoner delivers it to prison authorities).

1         5.  On October 3, 2011, petitioner filed a petition for writ of habeas corpus in the

2    Butte County Superior Court.  (LD 7.)  The petition was denied on November 4, 2011.  (LD 8.)

3         6.  Pursuant to Rule 3(d) of the Federal Rules Governing Section 2254 Cases, the

4    instant action was constructively filed on October 3, 2011.  (Dkt. No. 1.)

5         The statute of limitations begins to run when the petitioner's criminal judgment

6    becomes final.  The California Supreme Court denied the petition for review on March 24, 2010.

7    (LD 4.)  Petitioner's conviction became final ninety days later, on June 22, 2010, when the time

8    for seeking certiorari with the United States Supreme Court expired.  Bowen v. Roe, 188 F.3d

9    1157 (9th Cir. 1999).  The AEDPA statute of limitations period began to run the following day,

10   on June 23, 2010.  Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).  Absent tolling,

11   petitioner's last day to file his federal petition was on June 23, 2011.

12        The limitations period commenced on June 23, 2010.  Petitioner's first state court

13   petition was filed on June 18, 2008, prior to the beginning of the limitations period, and therefore

14   does not toll the statute of limitations period.  Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008).

15   Petitioner's second state court petition was filed on October 3, 2011, after the statute of

16   limitations period expired on June 24, 2011.  State habeas petitions filed after the one-year

17   statute of limitations period has expired do not revive the statute of limitations and have no

18   tolling effect.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003); Jimenez v. Rice,

19   276 F.3d 478, 482 (9th Cir. 2001).

20        Petitioner concedes that he filed the instant petition after the statute of limitations

21   period expired.  (Dkt. No. 22 at 1.)  Petitioner argues that he should be granted equitable tolling,

22   and that he has presented a colorable claim of factual innocence demonstrating a miscarriage of

23   justice.  (Dkt. No. 20 at 2, 11-12; 22 at 2-5.)  Accordingly, the court turns to petitioner's

24   alternative claims.

25   ////

26   ////

1    III.  Equitable Tolling

2            In the petition signed October 3, 2011, petitioner states that

3            during the past year the [CDCR] has been going through a
        population decrease and [his] personal property[, . . .] including
4            and not limited to all my legal work[,] was packed and stored
        pending transfer of inmates to comply with Federal Court Orders.
5            Through the proper institutional procedures [plaintiff] was able to
        finally track down and collect [his] legal property.  [Plaintiff]
6            understand[s] that [his] deadline per the "AEDPA" was in fact on
        March 23, 2011.  Due to powers beyond [his] control [he] was
7            treated as an inmate who wanted access to his personal property, in
        fact [he] had a deadline and hope that [he] may still be accepted by
8            the court.

9    (Dkt. No. 1 at 14.)  In his response to the court's earlier order to show cause, petitioner pled

10   ignorance of the law, lack of knowledge, and lack of legal assistance.  (Dkt. No. 13 at 3-4.)

11   Petitioner stated that these were not an excuse, but demonstrated that petitioner tried to be

12   diligent in attempting to seek justice.  (Id. at 3.)

13           Petitioner now claims that the filing of his federal petition was delayed based on

14   circumstances beyond his control.  Liberally construed, petitioner argues that his efforts to obtain

15   the legal files and evidence from his criminal defense attorney substantially delayed his ability to

16   timely file the federal petition.[2]  In support of this claim, petitioner provided copies of letters

17   from his defense attorney recounting counsel's efforts to prepare petitioner's file for shipping,

18   and then "re-create portions" of petitioner's file.  (Dkt. No. 20 at 20-23.)

19           Specifically, defense counsel informed petitioner that the cardboard box was

20   mailed to the prison on March 4, 2011.  (Dkt. No. 20 at 21.)  The box and lid were covered with

21

22           [2]  Petitioner's arguments concerning his ability to timely bring his federal claims are
difficult to parse because he continues to argue the merits of the petition, and includes his generic
23   arguments concerning the prison's alleged withholding of petitioner's legal materials during his
incarceration, and during his transfers between prisons, during the pendency of the instant
24   litigation.  For example, petitioner claims that once he arrived at the California Institution for
Men ("CIM"), his case file did not come with him.  (Dkt. No. 22 at 3.)  But petitioner was
25   transferred to CIM in 2012.  (Dkt. No. 18.)  Here, petitioner must demonstrate that he pursued his
rights diligently at all times prior to the filing of his federal habeas action.  Pace v. DiGuglielmo,
26   544 U.S. 410-11, 419 (2005).

5

1  strong shipping tape, clearly marked as legal materials, and did not contain any contraband.

2  (Dkt. No. 20 at 21.)  On March 15, 2011, the box was returned to defense counsel, "having been

3  'refused' by the prison," and the box was returned "in very bad condition.  Sturdy shipping tape

4  had been torn open and the discs and audio/video tapes had been removed."  (Id.)  On May 2,

5  2011, defense counsel informed petitioner that the Oroville Post Office confirmed that the box

6  did not leave Oroville in that condition when counsel mailed it on March 4, 2011, and that the

7  box was refused by the prison, and came back to counsel in damaged condition on March 15,

8  2011.  (Dkt. No. 20 at 23.)  At that time, petitioner was incarcerated at Pleasant Valley State

9  Prison in Coalinga, California.  (Dkt. No. 20 at 20.)  Defense counsel then explained that he had

10  sent plaintiff all the evidence counsel possessed, including tapes and photos, but that only some

11  of the evidence came back.  Thus, defense counsel asked the prosecutor to look for her file,

12  which defense counsel thought might be in a storage warehouse, so that defense counsel could

13  make copies of the prosecutor's evidence, but defense counsel had not yet heard back from the

14  prosecutor.  (Id.)

15          No additional letters from counsel were provided by petitioner, and petitioner did

16  not provide the date he ultimately received the materials from defense counsel.  Petitioner did not

17  provide copies of letters petitioner may have sent to defense counsel, and did not provide the date

18  he initially requested this file from counsel.

19          Respondent argues that petitioner should not be entitled to equitable tolling based

20  on petitioner's failure to provide specific facts or details of the alleged delay, and to demonstrate

21  how that delay hindered him from filing a timely petition.

22          a.  Legal Standards

23          In Holland v. Florida, 130 S. Ct. 2549, 2560, 2562, 2564 (2010), the Supreme

24  Court recognized that the AEDPA statute of limitations "may be tolled for equitable reasons"

25  when the petitioner has made a showing of "extraordinary circumstances."  To be entitled to

26  equitable tolling, petitioner must demonstrate "(1) that he has been pursuing his rights diligently,

6

1   and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S.

2   408, 418 (2005).  The Ninth Circuit explained:

3            To apply the doctrine in "extraordinary circumstances" necessarily
             suggests the doctrine's rarity, and the requirement that
4            extraordinary circumstances "stood in his way" suggests that an
             external force must cause the untimeliness, rather than, as we have
5            said, merely "oversight, miscalculation or negligence on [the
             petitioner's] part, all of which would preclude the application of
6            equitable tolling.

7   Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal citation omitted),

8   cert. denied, 130 S. Ct. 244 (2009).  It is petitioner's burden to show that he is entitled to

9   equitable tolling.  Espinoza-Matthews v. People of the State of California, 432 F.3d 1021, 1026

10  (9th Cir. 2005).  "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very

11  high, lest the exceptions swallow the rule."  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)

12  (citation omitted).  The petitioner must also demonstrate that he exercised reasonable diligence in

13  attempting to file his habeas petition after the extraordinary circumstances began, otherwise the

14  "link of causation between the extraordinary circumstances and the failure to file [is] broken."

15  Spitsyn, 345 F.3d at 802.  A petitioner who fails to file a timely petition due to his own lack of

16  diligence is not entitled to equitable tolling.  Pace, 544 U.S. at 410-11, 419.

17            A petitioner may be entitled to tolling if he is denied access to legal papers despite

18  his repeated requests for them.  See e.g., Espinoza-Matthews, 432 F.3d at 1027-28 (equitable

19  tolling applies if, despite the petitioner's diligence in seeking his legal file, he is not provided

20  access during the limitations period); Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002) (if

21  established, denying a prisoner access to his legal files during two temporary transfers which

22  lasted eight days would satisfy the "extraordinary circumstances" requirement for equitable

23  tolling).  However, a "temporary deprivation of an inmate's legal materials does not, in all cases,

24  rise to a constitutional deprivation."  Id. at 925.

25  ////

26  ////

7

1          b. Analysis

2                   i. Deprivation of Legal Materials

3          Petitioner did not renew this claim of deprivation of legal materials in his current

4    opposition, but the court will address the claim because it was included in the petition.  While the

5    deprivation of legal materials for a year may constitute "extraordinary circumstances," petitioner

6    must still demonstrate that he made reasonably diligent efforts to both obtain his legal materials

7    and to pursue his rights.  Here, petitioner failed to articulate the specific dates his legal materials

8    were taken from him, and did not set forth what efforts he took, if any, to obtain access to his

9    legal materials during the "past year" petitioner referenced in the petition.  Prisons have

10   procedures in place to allow inmates to access their legal materials, as well as an administrative

11   grievance system in which to alert prison officials to such a deprivation.  Plaintiff failed to allege

12   his efforts, if any, to avail himself of these procedures.

13         It appears petitioner also claimed his requests for his property were treated as

14   requests for personal property rather than legal property.  However, petitioner failed to articulate

15   what steps he took to clear up any such misunderstanding.  Petitioner acknowledged he was

16   aware that there is a one year federal statute of limitations period.  But petitioner failed to

17   articulate facts showing that he pursued his rights diligently.  In addition, petitioner provided no

18   factual allegations as to his efforts to pursue his rights during the three months prior to the one

19   year period his legal materials were allegedly packed and stored.  The statute of limitations

20   period commenced on June 23, 2010.  The date of October 3, 2010 ("during the past year... my

21   legal work was packed and stored ..." Dkt. No. 1, at 14)[3], is one year prior to the date petitioner

22   signed the petition, leaving a little over three months before petitioner's legal materials were

23   stored for petitioner to pursue habeas relief.  Petitioner provides no facts to support application of

24   equitable tolling for this period of just over three months.

25   _____

26         [3] Petitioner also does not specify the date on which he once again obtained his legal
     materials.

8

1    In his subsequent briefing, petitioner again provided no specific information as to

2   his efforts to obtain his legal materials from prison officials, or to explain what efforts he took to

3   pursue habeas relief during the three months prior to the alleged storage of his legal materials.

4   Petitioner asked "what is he supposed to do when staff disobey the law?" and then claimed there

5   was "nothing he can do when he is locked in prison and staff refuses to do their jobs." (Dkt. No.

6   22 at 3.)  However, as noted above, there are procedures in place for petitioner to seek access to

7   his legal materials in prison, and, if those efforts failed, petitioner could use the grievance

8   process to obtain access.  Despite multiple opportunities, petitioner failed to set forth what steps

9   he took, if any, to avail himself of those procedures.  Thus, petitioner failed to demonstrate both

10  that he was pursuing his rights diligently, or that some extraordinary circumstance stood in his

11  way in connection with his claim that he was deprived of his legal materials by prison officials.

12                          ii.  Petitioner's Pro Se Status

13   To the extent petitioner argues that he is entitled to equitable tolling based on his

14  ignorance of the law, lack of knowledge, or lack of legal assistance, such arguments are

15  unavailing.  Lack of knowledge of the law or legal assistance does not establish "extraordinary

16  circumstances" preventing him from timely filing a federal habeas petition.  The Ninth Circuit

17  has held that a petitioner's pro se status and claims of ignorance of the law are insufficient to

18  justify equitable tolling.  See Waldron–Ramsey, 556 F.3d at 1013 n.4 ("we have held that a pro

19  se petitioner's confusion or ignorance of the law is not, itself, a circumstance warranting

20  equitable tolling"); Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se

21  petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting

22  equitable tolling"); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 909 (9th Cir. 1986) (pro se

23  prisoner's illiteracy and lack of knowledge of law unfortunate, but insufficient to establish

24  cause).

25                          iii.  Delay in Obtaining Defense Counsel's Files

26   Petitioner argues that he is entitled to equitable tolling because he was unable to

1    timely obtain defense counsel's files and evidence.  As set forth above, petitioner supported this

2    claim with letters from counsel sent during some portion of the statute of limitations period.

3           The Ninth Circuit has recognized that a petitioner's separation from his file and

4    transcripts may provide a basis for equitable tolling.  <u>Ramirez v. Yates</u>, 571 F.3d 993, 998 (9th

5    Cir. 2009) (a complete lack of access to a legal file may constitute an extraordinary

6    circumstance); <u>United States v. Battles</u>, 362 F.3d 1195, 1197 (9th Cir. 2004) (equitable tolling

7    may be allowed if counsel withheld transcripts during limitations period).  It is not sufficient to

8    show that he did not have his legal files during the limitations period; petitioner must also show

9    how the lack of access to his file made a timely filing impossible and that he was diligent in

10   seeking his files.  <u>Ramirez</u> 571 F.3d at 998.  Petitioner has not made either showing.

11          First, petitioner failed to demonstrate that he was diligent in seeking defense

12   counsel's files.  Here, petitioner was convicted on May 1, 2008, and his conviction was affirmed

13   on March 24, 2010.  Thus, petitioner could have sought defense counsel's files and evidence

14   shortly after March 24, 2010.  Petitioner provided no evidence as to his efforts to obtain these

15   legal materials from defense counsel from June 23, 2010, the date the limitations period began

16   running, until some time before March 1, 2011.  The March 1, 2011 letter raises an inference that

17   petitioner requested his files some time prior to March 1, 2011.  But petitioner did not state when

18   he first sought defense counsel's files, or explain what efforts he took to obtain the files.

19   Because the first letter from defense counsel is dated March 1, 2011, almost a year after his

20   conviction was affirmed on March 24, 2010, and a few months prior to the expiration of the

21   statute of limitations deadline, petitioner failed to demonstrate diligence.  Moreover, petitioner

22   acknowledged in his petition that he understood the AEDPA statute of limitations deadline was

23   March 23, 2011.  (Dkt. No. 1 at 14.)  Given petitioner's understanding of the deadline, seeking

24   defense counsel's files some time prior to March 1, 2011, cannot be construed as reasonable

25   diligence.

26   ////

1    Second, petitioner failed to show it was impossible for him to prepare a basic

2  habeas petition without defense counsel's files.  Petitioner does not allege that he was not sent

3  the appellate briefs or superior court petition which could have provided him information

4  sufficient to draft a federal petition.  Indeed, defense counsel's May 2, 2011 letter confirmed that

5  appellate counsel had mailed to petitioner "all of the transcripts and briefs, but none of the

6  evidence." (Dkt. No. 20 at 23.)  Petitioner does not identify what information he had available,

7  or what additional information he needed.  Petitioner only makes reference to not having "all of

8  the relevant facts before him." (Dkt. No. 22 at 2.)  Moreover, it does not appear that petitioner

9  raised new claims in the instant petition; rather, petitioner simply attached a copy of appellate

10  counsel's petition for review that was filed in the California Supreme Court on February 12,

11  2010.  (Compare Dkt. No. 1 at 17-44 to LD 3.)  Thus, petitioner failed to demonstrate what

12  additional information was required from defense counsel's files to enable petitioner to timely

13  file the federal petition.

14    Therefore, although petitioner provided some evidence that he did not have

15  defense counsel's complete files during some portion of the limitations period, petitioner failed

16  to show he was diligent in seeking the files, or that the lack of access to defense counsel's

17  complete files made the timely filing of his federal petition impossible.  Thus, petitioner is not

18  entitled to equitable tolling on this claim.

19                    iv.  Conclusion re Equitable Tolling

20    Respondent's motion to dismiss was filed on December 15, 2011.  (Dkt. No. 7.)

21  On March 1, 2012, petitioner was informed of the legal standards governing equitable tolling,

22  and advised that it was his burden to show that he is entitled to equitable tolling.  (Dkt. No. 12 at

23  4-5.)  Petitioner was subsequently granted two extensions of time to oppose the motion to

24  dismiss (dkt. nos. 16, 19), in which he could have presented specific facts, dates, and arguments

25  in support of his request for equitable tolling.  Despite this generous opportunity to provide

26  specific facts and details concerning the alleged delay, and how the delay may have prevented

1   petitioner from timely filing the instant petition, petitioner failed to meet his burden.  Thus,

2   petitioner is not entitled to equitable tolling.

3   V.  Actual Innocence

4            In his response to the court's order to show cause, petitioner claimed that there

5   was new evidence proving the claims of the petitioner which were previously unavailable at trial,

6   and that petitioner therefore has a claim of "actual innocence and/or miscarriage of justice."

7   (Dkt. No. 13 at 2, 8.)  As noted in this court's May 1, 2012 order, it appears that petitioner

8   contends that the fact that his ex-wife died from a fall in 2009 demonstrates that rather than being

9   beaten by petitioner, his ex-wife could have similarly fallen in 2008, as petitioner contended at

10  trial. (Dkt. No. 13 at 8.)  Petitioner provided a photocopy of the victim's death certificate

11  showing that petitioner's ex-wife died on December 21, 2009, of an acute intracerebral

12  hemorrhage and an accidental fall.  (Dkt. No. 15 at 203.)  Petitioner provided a photocopy of a

13  letter from Sandy, the victim's daughter, who notified petitioner of her mother's death by letter

14  written prior to the victim's viewing and funeral.  (Dkt. No. 15 at 200-02.)  Sandy's letter

15  informed petitioner that his ex-wife fell on cement, and described the ex-wife's subsequent

16  medical treatment and symptoms.  (Id.)  Moreover, petitioner provided a photocopy of a January

17  21, 2010 letter written by petitioner's sister, Sally Fowler, to petitioner's appellate counsel,

18  advising counsel that petitioner's ex-wife had died, and stating:  "In [petitioner's] trial, it was

19  stated that a fall would not have caused Martha['s] injuries, yet in the end it was a fall that caused

20  her death."  (Dkt. No. 15 at 198.)  Ms. Fowler went on to describe her view of the victim's

21  medical history, and how she thought the victim was "very unstable on her feet and required

22  assistance from [petitioner] to get in and out of bed, a car, or just move around the house."  (Id.)

23            In his current opposition, petitioner's claim of actual innocence is more vague.

24  Petitioner argues that it is error for the court to deny his actual innocence claim on the basis that

25  there was sufficient evidence to support the jury's verdict, and that "not only did petitioner not

26  beat his wife, but . . . if not for the numerous and very prejudicial acts of trial counsel, the jury

12

1   would have at the very least 'reasonable doubt.'" (Dkt. No. 20 at 11.)  Petitioner claims that the

2   evidence presented at trial was one-sided, that defense counsel failed to call witnesses to testify

3   that the victim often suffered bruising due to normal daily functions, and again reiterates his

4   myriad claims of alleged ineffective assistance of defense counsel during trial.  (Dkt. No. 20 at 4-

5   11.)  In his September 4, 2012 filing, petitioner claims that he has not abandoned his claim that

6   he is factually innocent.  (Dkt. No. 22 at 4.)  Petitioner contends that if he had been represented

7   by "competent" counsel at trial, the jury would have reached a different verdict.  (Id.)  Petitioner

8   now alleges that the "only thing used to convict the petitioner was speculation," and that the

9   "only person saying petitioner hit his wife is from the step-daughter that hates him."  (Dkt. No.

10  22 at 4-5.)

11              Respondent argues that petitioner failed to explain or provide evidence to

12  demonstrate his claim of innocence.  (Dkt. No. 21 at 4.)  Respondent contends that petitioner's

13  reliance on ineffective of assistance claims based on events that took place during trial are

14  insufficient to meet the high standard required, because the claims are not evidence of

15  petitioner's innocence.  (Id.)

16              The Supreme Court has held that a court may consider an otherwise procedurally

17  defaulted claim for habeas relief if the court's failure to hear the claim will result in a miscarriage

18  of justice, particularly in a case where the petitioner demonstrates "actual innocence."  Schlup v.

19  Delo, 513 U.S. 298, 324-29 (1995) ('[A]ctual innocence' means factual innocence, not mere

20  legal insufficiency."  Bousley v. United States, 523 U.S. 614, 623 (1998).)  Further, the Ninth

21  Circuit has held that "where an otherwise time-barred habeas petitioner demonstrates that it is

22  more likely than not that no reasonable juror would have found him guilty beyond a reasonable

23  doubt, the petitioner may pass through the Schlup gateway and have his constitutional claims

24  heard on the merits."  Lee v. Lampert, 653 F.3d 929, 930 (9th Cir. 2011).  Schlup requires a

25  petitioner "to support his allegations of constitutional error with new reliable evidence -- whether

26  it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

1    evidence -- that was not presented at trial." Schlup, 513 U.S. at 324; Griffin v. Johnson, 350

2    F.3d 956, 962-63 (9th Cir. 2003) (Schlup's "new reliable evidence" threshold requires only

3    "newly presented evidence," that is, evidence which was not presented at trial.)  Petitioner must

4    show that in light of all the evidence, including evidence not introduced at trial, "it is more likely

5    than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

6    Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (stating that in order to be credible, a claim of

7    actual innocence requires that the petitioner support his allegations of constitutional error with

8    new reliable evidence that was not presented at trial) (quoting Schlup, 513 U.S. at 327).   In

9    considering this new evidence, the court is not bound by the rules of admissibility.  Id., at 316.

10                  First, petitioner previously conceded that his ex-wife "said both that petitioner hit

11   her and [that she] sustained [her injuries] in a fall." (Dkt. No. 15 at 8.)  Petitioner admits that he

12   argued at trial that his ex-wife sustained her injuries during a fall rather than from petitioner's

13   own hand.  (Id.)  Thus, the jury received evidence that the victim was injured in a fall, yet

14   decided that the victim was injured by petitioner rather than from injuries sustained from a fall.

15   Indeed, at the Marsden[4] hearing after the jury verdict, petitioner's defense counsel noted that "the

16   entire allegation of what happened to Martha [the victim] depended on what Martha said in front

17   of the jury.  I think Martha came through loud and clear that [petitioner] had assaulted her."

18   (Dkt. No. 15 at 42.)  The jury found petitioner guilty despite the defense eliciting on rebuttal her

19   statement that petitioner "wouldn't hurt her." (Dkt. No. 15 at 44-45.)  Thus, that petitioner's ex-

20   wife victim subsequently died from a fall does not demonstrate that it is more likely than not that

21   no reasonable juror would have found petitioner guilty of domestic violence beyond a reasonable

22   doubt.

23                  Second, to the extent that petitioner contends that his ex-wife's subsequent death

24   from a fall "exactly" like the fall petitioner contended inflicted the earlier injuries at issue here

25   _____

26       [4]  People v. Marsden, 2 Cal.3d 118 (1970).

14

1   means that the new evidence would tip the scale in petitioner's favor, such a theory is speculative

2   and conclusory.  Petitioner claims that his ex-wife's death occurred exactly as petitioner said she

3   was previously injured.  (Dkt. No. 14 at 8.)  But the court is unable to make such an assumption

4   from the proposed evidence submitted by petitioner.  The circumstances of the victim's final fall

5   are not included, and petitioner offered no facts or evidence supporting his claim that the falls

6   were "exactly" the same.  Moreover, the fact that the victim later died from a fall does not

7   preclude the jury's finding that petitioner injured the victim on an earlier occasion.  Falls differ in

8   circumstance and cause.  As noted in Ms. Fowler's letter, evidence was adduced at trial that the

9   victim's injuries would not have been caused by a fall.  (Dkt. No. 15 at 198.)  But more

10  importantly, the subsequent fall would have no bearing on the victim's own testimony that

11  petitioner assaulted her.  Thus, the proposed new evidence, taken with the evidence adduced at

12  trial, would not lead a reasonable juror to conclude that petitioner did not commit domestic

13  violence on the victim.

14              Petitioner's argument that the only thing used to convict him was "speculation,"

15  and that it was only the step-daughter who said petitioner hit his ex-wife, is not supported by the

16  record.  But in any event, this argument is unavailing under the Schlup standard.  As set forth

17  above, petitioner must submit new reliable evidence that was not presented at trial.  Simply re-

18  arguing the evidence presented at trial is insufficient because it does not demonstrate that

19  petitioner is probably innocent of domestic violence.  Moreover, as argued by respondent,

20  petitioner's ineffective assistance of counsel claims also do not support a claim of actual

21  innocence under Schlup.  Petitioner's claims that his counsel was ineffective are mere legal

22  insufficiency claims, not evidence of petitioner's actual innocence.  Similarly, petitioner's self-

23  serving and unsupported statement that he did not hit his wife is not new evidence demonstrating

24  that petitioner is actually innocent of domestic violence.  In cases where courts have determined

25  that a federal habeas petitioner met the Schlup standard, the "new evidence" consisted of credible

26  evidence such as the petitioner's solid alibi, see Garcia v. Portuondo, 334 F. Supp. 2d 446 (S.D.

1   N.Y. 2004), numerous eyewitness accounts of the crime that exonerated the petitioner, see

2   Schlup v. Delo, 912 F. Supp. 448 (E.D. Mo.1995) (on remand), DNA evidence excluding the

3   petitioner and identifying another potential perpetrator, see House v. Bell, 547 U.S. 518, 538-53

4   (2006), and a credible confession by a likely suspect stating that he had framed the petitioner, see

5   Carriger v. Stewart, 132 F.3d 463, 477-82 (9th Cir. 1997).  Petitioner's contentions of innocence

6   fall far short of meeting the Schlup standard.

7           For all the above reasons, petitioner fails to present any new reliable evidence, not

8   presented at trial, that shows it is more likely than not that no reasonable juror would find

9   petitioner guilty beyond a reasonable doubt.  Schlup, 513 U.S. at 324.  Thus, petitioner is not

10  excused from his late filing under the Schlup "actual innocence" exception, and the petition must

11  be dismissed as time-barred.

12  VI.  Request For An Evidentiary Hearing

13          Petitioner asks for an evidentiary hearing because "respondent has done nothing

14  but deny the claims of the petitioner," and "[t]he way to prove petitioner's claims is to let

15  experienced attorneys resolve this case in a court of law."  (Dkt. No. 22 at 6.)  However,

16  petitioner presented nothing which suggests that a hearing would allow him to develop

17  information he was unable to present either through documents or his own declaration.  Thus,

18  petitioner's request is denied.

19  VII.  Certificate of Appealability

20          In order to proceed with an appeal, petitioner must receive a certificate of

21  appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; Allen v. Ornoski, 435 F.3d 946, 950-

22  51 (9th Cir. 2006).  Generally, a petitioner must make a substantial showing of the denial of a

23  constitutional right to warrant a certificate of appealability.  28 U.S.C. § 2253(c)(2); Slack v.

24  McDaniel, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable

25  jurists would find the district court's assessment of the constitutional claims debatable or

26  wrong."  Id., 529 U.S. at 484.  In order to meet this threshold inquiry, the petitioner has the

1    burden of demonstrating that the issues are debatable among jurists of reason; that a court could

2    resolve the issues differently; or that the questions are adequate to deserve encouragement to

3    proceed further. Id.  This court has considered the issues raised by petitioner, with respect to

4    whether they satisfy the standard for issuance of a certificate of appealability, and determines that

5    none meet that standard.  The court therefore recommends denying petitioner a certificate of

6    appealability.

7    VIII.  Conclusion

8              Accordingly, IT IS HEREBY ORDERED that petitioner's request for evidentiary

9    hearing is denied; and

10             IT IS RECOMMENDED that:

11             1.  Respondent's December 15, 2011 motion to dismiss (dkt. no. 7) be granted;

12             2.  This action be dismissed; and

13             3.  Petitioner be denied a certificate of appealability.

14             These findings and recommendations are submitted to the United States District

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16   days after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

19   objections shall be filed and served within fourteen days after service of the objections.  The

20   parties are advised that failure to file objections within the specified time may waive the right to

21   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22   DATED:  September 19, 2012

23

24   _____
                  KENDALL J. NEWMAN
25                UNITED STATES MAGISTRATE JUDGE

26   rugg2624.mtda2

17